is Gregory Garmong v. Tahoe Regional Planning Agency, case number 21-16653. I think we have three parties on for video. It appears to me from the calendar that, all right, each side has 15 minutes total. It appears for me that the appellees want to split their time, giving 10 minutes to Debbie Leonard and 5 minutes to Erin Lovas, or Lovis. Did I get that correct? Yes, Your Honor. Okay. So just so that you know, I'm not sure who's Mr. Lovis, but since you're going second, you will get your 5 minutes, even if we take Ms. Leonard over, it's not cutting into your time, all right? So you get your 5 minutes, so you don't need to start making hand signals to or to try to take her off the video, as far as that goes, because I don't know, if my colleagues have questions, sometimes that takes over on that part of it, but I do commit to you, you will get your 5 minutes. Thank you, Your Honor. Let's start with the plaintiff appellant, I believe that's Mr. Hebert. May it please the court, my name is Carl Hebert, I'm counsel for plaintiff appellant Gregory Garmong. I apologize for the far away perspective. Yes, you're very far away, I wouldn't recognize you if I see you again, but that, I don't know, that could be good or bad for, I don't know if you can see us any better, but... I can see you fine, but I can tell you what happened, Your Honor, and that is that while I was watching the first argument, the camera in this conference room defaulted to its previous focus. That's, it was set up so that I looked as good as the others did, but not now. Well, we can hear you fine, so Mr. Hebert, did you want to reserve any time for rebuttal? Five minutes please, Your Honor. All right, that's aspirational, but we'll try to keep track of that. Thank you, Your Honor. This is the second time that Mr. Garmong's lawsuit has been dismissed at the pleading stage. The first time occurred back in 2018 and generated the first appeal to this court. The case was dismissed then on standing grounds. This court reversed in a memorandum decision on November 30, 2020, and in it, it said, in that decision, this court said, Mr. Garmong has constitutional Article III standing and he has statutory standing under the compact as an aggrieved person. The court then instructed, this court then instructed the district court to analyze the complaint claim by claim for standing and to analyze the motion for preliminary injunction that Mr. Garmong filed. Instead, given this rule of mandate, the district court then went off and invited another round of motions to dismiss a second time, which the defendants did. They filed motions to dismiss, and the district court again dismissed the case, which is the appeal we're here on now. In ruling on the motions to dismiss, the district court, near as I can tell, completely ignored the rule of mandate, did not analyze standing for claim by claim. As this court said, standing is not dispensed in gross. Further, the court did not analyze in any way the motion for preliminary injunction. So in other words, the court ignored the rule of mandate and the instructions from this court. So what did the court do? Well, let me ask you this. What's your best authority that the court can impose civil penalties against the agency in favor of Mr. Garmong? And then I'm also noticing it appears that you're asking to impose civil penalties against individually named defendants and the private companies. So what's your authority for that? Well, the civil penalties for violating the compact are found within the compact itself. I think it's Article 6L. To us, it's kind of a subsidiary issue. We have other things to get past to even get to that. But I think the compact itself in Article 6L, if I'm not mistaken, allows for civil penalties of $5,000 a day. Well, I realize it says that, but is there any authority out there that says that there's a private cause of action regarding that? Your Honors. Or is it just meant for something that the agency can do? Well, that seems problematic that the agency would find itself for violating the law. Well, no, that's not entirely true. They would find private parties for, you know, it would be an enforcement mechanism. Mr. Garmong is not the agency here. That's true, Your Honor. But the civil penalties in 6L talk about finding, I think it says find members of the agency. But, so the question to me is whether or not there's authority for the agency to find private parties. Is that the question? No. I think the question is, does your client as a private citizen have a private right of action against the defendants? Can you cite any case that interprets 6L to give you that authority or that standing to sue? Not at the moment, Your Honor. The reason we're asking this is because normally a government agency, you know, you think of the paradigmatic way a government agency typically works is you can challenge the government agency making a decision, but you normally challenge that, you know, if it's a federal agency through the APA and you say the agency didn't, you know, its decision was arbitrary and capricious or something like that, right? And what do you get? Well, normally you don't get damages or a fine against the, you know, the private citizen doesn't get a fine against the agency or a penalty. What it does is it gets the agency's action held unlawful. And on the other hand, the agencies, many agencies have authority to issue penalties against private citizens for violating their rules. You know, if it's a fishing game or something like that, they can fine you or penalize you for violating their rules or the, you know, the EPA can fine or penalize somebody for violating their environmental rules. But you seem to be kind of flipping that on its head. This whole case seems to be flipping that on its head. Instead of following and saying I'm trying to show that these folks acted unlawful and therefore exceeded their discretion and under that provision, you didn't really bring a claim for that as best I can see, and instead what you're doing is you're trying to use the penalty provision, and it just seems to be exactly backwards from the way most agencies do. So you're asking us to interpret this in a way that would be backwards, and we're trying to figure out like what you're, I mean, we know you have the text of the statute, but you're asking us to apply it in a way that I'm not sure I've ever seen applied in any other agency context. Well, Your Honor, let me see if I can clarify the situation. We don't want the tail to wag the dog. The penalties are not the important part here. What's important is what you said, and that is the agency acted in violation of its own regulations and ordinances in approving the permit for the cell tower. We want that action undone. We want that permit withdrawn, and that's the whole point of the motion. Except the cell tower has now been built is my understanding, and if you don't have a claim for penalties, is the case moot? I mean, there's... I don't think so, Your Honor. The permit can be withdrawn at any time. Well, but what's the... What remedy can... Is that we tear down the cell tower? Is that the remedy why it's not moot, or what? Well, ideally, yes, Your Honor. The cell tower should never have been built, but what Mr. Garmon wants, first of all, is so that the permit to be withdrawn, I mean, it should never have been granted. And see, the problem we have in this case is the district court, through what it did in these serial motions, granting serial motions to dismiss, strung this case out to the point where the cell tower was built, and now the argument is that it's moot. And there's a Sixth Circuit case cited in the opening brief that says that when someone in the position of a rise goes ahead and acts on the permit, they take the risk that they may have to take the cell tower down because it came with this motion for preliminary injunction in this litigation. Let me ask you this. I mean, it is... You know, your count... You have counts 1 to 11 and 13 that I think raise a lot of these alleged procedural violations about the agency. All right, but I understand that the defense position is that you've abandoned all those by failing to defend them in the district court. Now, what's your answer to that? Failing to... We did not fail to defend our position in the district court, Your Honor. The whole crux of this thing is, it's Article 6J3. Mr. Garmung is an aggrieved party. The law of the case from the prior decision of this court says he's an aggrieved party. And he's saying, under Article 6J3, that they, the TRPA, did not approve this cell tower within the confines of their own regulatory scheme. And that's... That theme continues throughout the First Amendment complaint. But what... If I'm answering your question, what the district court did, the district court said, okay, look, I'm going to accept that they're standing here, Article 3 standing and statutory standing under the compact, because I have to, because the Ninth Circuit told me I had to. Then he goes on to say, and I can quote to the court, he goes on to say, but Mr. Garmung never petitioned for judicial review. Which I find somewhat unbelievable, because under Rule FRCP8, it's a plain and simple statement of the claim. And at paragraph two, let me quote paragraph two from the complaint. Whoa. Let me explain to you what I think the district court is doing there. If you use petition for judicial review in just sort of like a broad sense of meaning did you bring a lawsuit, that's not what the district court is talking about. What the district court is talking about is, let's say you were going to sue the EPA, and you would, the way you would sue the EPA is you would bring an action under the APA. You understand that, right? Yes. Okay. Yes. And instead, what you've done is you've effectively sued the EPA by saying that the EPA caused you intentional infliction of emotional distress, like you brought like some sort of either Nevada or California or some sort of state law claim, and then what happened is the defendants came in and said, no, no, no, you've got to sue under the APA. And you say, well, I have said that the EPA violated the law by causing me, the EPA violated the law by causing me intentional infliction of emotional distress. You see the problem. Like you should have sued, you should have just brought a claim under the APA, except for not the APA in this case, under the specific provision that is effectively like the APA standard of review for... Your Honor, I'm pretty sure we did that. I mean, I don't want the court to be distracted by these supplemental claims for relief for intentional infliction of emotional distress, elder abuse. Why did you bring them? I probably shouldn't have. Yeah, that's the problem with the kitchen sink approach. And it seems like you brought any and every kind of claim except for the one that you needed to bring. And when they came in and said you didn't, you said, I'm saying that you're violating the law, but the problem is, is the law that you're saying they're violating is the intentional infliction of emotional distress and stuff like that. Your Honor, I disagree. If you look at paragraph two of the first amendment complaint, here's what it says. Defendant Tahoe Regional Planning Agency in violation of its own rules and procedures approved a permit, the plaintiff challenges the granting of the permit. How else do we say it under rule eight? That is a short and plain statement of what we're doing here. And then if you look at probably overplayed first amendment complaint, if you look at many of these claims for relief, they're all based on the fact that the TRPA approved a commercial use in a setting, plan area statement 60, which prohibits commercial uses. So Mr. Garmon is saying, wait, I am challenging that permit. And then he goes on to say, and there are a lot of other 1983 claims for relief and intentional infliction of emotional distress, which he probably shouldn't have. But the point is this, at its core, this complaint challenges the granting of that permit because it is illegal under the TRPA's own provisions. I mean, unless there's some magic language that says I have to say this is a petition for judicial review, that's what this complaint does. Unless Judge Van Dyke wants to ask you questions now, you have three minutes left, why don't we go to the other side, see exactly what they're finding fault in, and then you have three minutes to respond to that. Thank you, Your Honor. Okay. Ms. Leonard, are you going first? Yes, Your Honor. Thank you. Thank you, and may it please the court, I'm Debbie Leonard on behalf of the Tahoe Regional Planning Agency and the 18 individual governing board members, employees, and hearings officer of TRPA that Mr. Garmon sued. And I will be handling the arguments or the issues that the court has already been discussing with Mr. Aber and Mr. Lovis will be discussing mootness, the preliminary injunction, and the Noor-Pennington Doctrine. So I think the court is absolutely correct that this complaint, this first amended complaint, does not plead a judicial review claim against the agency. And although Mr. Garmon is now trying to refashion it before this court to contend it does. We had a long procedural history where this case has gone up and down with this court and has been subject to multiple rounds of motions to dismiss. And at no time, and throughout that time, the defendant said he has not alleged a judicial review claim under the compact. And in response, he amended his complaint once and did not add that type of claim. Make sure I understood you carefully. Did you say that he has affirmatively said he did not allege that kind of claim? Or were you just saying that he has not said that he was alleging that kind of claim? Which one? The latter, Your Honor. Okay. He said that, well, in response, he never alleged a judicial review claim and he never said that he had. The first time that he said he had is before this court, five years into the litigation. So if I understand correctly, your position would be, you know, you pushed back and said you can't bring an intentional affliction of emotional distress claim. And instead of coming back and saying this isn't an intentional affliction of emotional distress claim, it's a judicial review claim disguised as an I.I.D. claim. Instead, he said, no, I can bring an emotional, an intentional affliction of emotional distress. That was his response to you. Is that? Precisely. He kept asserting that, yes, he can bring state law claims. He kept asserting that he can bring constitutional claims. He said everything except I'm bringing a judicial review claim under the compact. Well, I thought I had read from his complaint that he was claiming that the TRPA did not follow its own rules. Your Honor, I think the important thing is to look at what are the actual claims for relief say. And in his opening brief, again, for the first time, he's pointing to claims one through thirty three as purporting to assert a judicial review claim under Compact Article 6J5, which he had never before said. And when you look at, first of all, Twombly makes quite clear that the defendants are entitled to fair notice of the nature of the claim and that the allegations must show that the plaintiff is entitled to the relief sought. If you look at those claims, the first thing is that they show Garmon was seeking damages and attorney's fees. That is something that you see throughout the complaint, that he was going after money. And that is not a remedy that is available for a judicial review claim. With a judicial review claim, the remedy would be reversal and remand to the agency to review the application again. If you look at each of those claims, he cites 42 U.S.C. Section 1988, which shows that he construes those claims as being constitutional claims for which he was seeking damages under 1983 and attorney's fees under 1988. The second thing about the complaint, and your honors addressed this earlier, is that the claim that he pled against under the Compact was Article 6L, which I think your honors correctly pointed out, that is not a private cause of action, or doesn't create a private cause of action. Well, there's no case law out there, exactly, is there? No, your honors. Do you have a case that says that? No, I think the plain language of the Compact, though, it says any person who violates any provision of this Compact. And then it separately uses the term agency, clearly showing that a person is different than the agency. And so this is relating to the agency's authority to impose penalties. Well, so basically, I guess my question there was, there isn't anything published out there on that. It's, you're just going by the language, and you're saying, I guess I'm hearing you say there probably needs to be something published out there. Your honor, there's nothing published on that. This is the language of the Compact, and there's deference that should be given to the agency in interpreting its own Compact.  It's our job to interpret the statute. I mean, the 6L provision of the Compact. I don't know if it's the agency's right or our right. I mean, it's apparently an issue of first impression, as Judge Callahan seems to have brought up. Your honor, it is absolutely the job of the court. My, what I'm saying is that the agency is afforded deference in the interpretation of its own Compact, as it has been. And I don't know if this is necessary for a published opinion. I'm saying that this is something that the agency is afforded the, it gives itself authority to impose civil penalties to prevent violations by others. The agency can impose civil penalties. The question is, does that 6L also allow the private individual to sue the agency members for the same, under the civil penalties provision? Our answer is no, it does not. And I think the, looking at Article 5J, excuse me, 6J5, which can, which provides for the legal action against the agency. And that whole subdivision of Article 6J sets forth the sole mechanism by which someone can bring a legal action against the agency. And so interpreting the Compact as additionally giving a cause of action, when you have an entire separate subdivision that sets forth the mechanism by which someone can do so, we think is inconsistent with the language of the Compact. So I just want to be. Well, the other thing I do, I do want to ask you, is your position that the plaintiff has abandoned claims 1 to 11 and 13 by not defending them in this district court or not? Your Honor, I, the terminology abandoned is not necessarily what we have used. What we have said is that he has never construed those as stating a judicial review claim. He has always asserted that those are damages claims. And we have said they don't assert any cause of action because you can't get damages against the agency. You can only get judicial review. And he hasn't disputed that. Notably, he's been given two opportunities to amend. He amended once and didn't, after we pointed out this deficiency in the initial complaint and he didn't rectify it. And then on the, upon remand, when he was given the opportunity to amend again, he chose to stand on his complaint, notwithstanding that we had said numerous times, there is this deficiency you can't, you haven't stated a cognizable cause of action. And so that constitutes a waiver of the ability to amend again. And he all along has never said, yes, I have stated a cause of action for judicial review. He's never interpreted these causes of action that Your Honor was just referring to as abandoned. He's never referred to them as seeking judicial review. He's always claimed that he wants damages and attorney's fees and penalties against the agency. So I think whatever the terminology we use, I think the important thing is he has, he has waived any right to seek judicial relief. Well, let me ask you this.  Correct, Your Honor. So if he's not entitled to civil penalties and the tower's built, is his case moot? Well, Your Honor, I, Mr. Lovis was prepared to talk about mootness and so I would defer to you on that question. All right. I'll leave it there then. I won't take on your time then. Sorry. Okay. I, Your Honors, I just want to just underscore that the one other point, and that is that Mr. Garmung has relied is simply a prudential standing standard. It doesn't create a separate cause of action for judicial review. It's just says what the, someone must do in order to be agreed to bring an action. And so Mr. Garmung's reliance upon that is not effective. So make sure, let me make sure if my colleagues have any questions before your time wraps up. Thank you. Okay. You have like 30 seconds. All right. Well, I just want to wrap up that this was a strategic decision by Mr. Garmung to only go for money against the agency. He was given numerous opportunities to amend. We set forth numerous times exactly what he needed to do. And we've now been in this litigation for five years with numerous individuals having been sued, which obviously affects them. And we feel like now is the time to affirm. Thank you. Thank you. All right. Mr. Leavis. Yes. Good morning.  May it please the court. My name is Aaron Leavis. I represent private party defendants appellees, Verizon Wireless and Crown Castle. And for the purposes of the argument this morning, I'll be also be arguing on behalf of Complete Wireless Consulting and Maria Kim. As Ms. Leonard referred to earlier, I planned to address the issues of the district court's proper dismissal of various claims against the private parties under the Norr-Pennington Doctrine and also the issue of whether the district court's denial of the motion for preliminary injunction as moot was proper. Your Honor, given your question towards the end of Ms. Leonard's portion of the time, I would be happy to address that mootness issue first, if that's your preference. Please. Your Honor, the motion for preliminary injunction was denied as moot precisely because the underlying case had been dismissed. The motion for preliminary injunction specifically states in its opening lines that it was specifically and solely based upon Claim 1 of the First Amendment Complaint. Once the district court dismissed with prejudice the First Amendment Complaint in its entirety, there was no longer any claims upon which the motion for preliminary injunction could be based. And therefore, it, along with a number of other pending motions referenced at the end of the district court's dismissal order, was rendered moot. And it was further moot because without any underlying claims, it would be a legal impossibility for the plaintiff to make any showing that he had a likelihood of success on the merits. The merits of what? There were no claims then in existence. And so that's precisely why the motion for preliminary injunction was moot as it was With respect, Your Honors, to the dismissal of Claims 13, 28, 29, 32, and 34 of the First Amendment Complaint under the Norr-Pennington Doctrine, this was proper for the district court to do as well. The Norr-Pennington Doctrine is a First Amendment principle that absolutely protects speech generated by petitioning the government and any activity incident to that speech. Those activities are absolutely immunized and any claims, whether they are federal, state, constitutionally based, common law, statutory, those are all barred by that protection under the Norr-Pennington Doctrine. And the only exception to the Norr-Pennington Doctrine is the sham exception, which has a very narrow definition, which the district court found did not apply under these circumstances and which, in fact, the appellant conceded did not apply at page 67 of his opening brief. And so the sham exception is off the table, leaving the Norr-Pennington Doctrine to apply as a blanket to the petitioning activity by the private party. I think he, doesn't he, Mr. Garmon claim that there were false reports and misrepresentations were made to TURPA in the course of the permit approval and that's his basis? So that is the claim, Your Honor, you're correct. However, number one, his allegations of quote-unquote false statement are just that. They are conclusory, vague, unsupported allegations, which wouldn't meet even a Rule 9 pleading standard if they were brought in the form of a fraud or misrepresentation cause of action. But that aside, false statements in and of themselves do not negate the application of the Norr-Pennington Doctrine. In fact, the Supreme Court, not in the Norr-Pennington context, but in one of the cases that the appellant cites has said that some false speech must be protected in order to protect the larger universe of speech that matters. That's the Gertz versus Robert Welch case. And so, Your Honor, whether or not there were false statements, that doesn't negate the application of the protections of the Norr-Pennington Doctrine. That's not to say there might not be other ramifications for false statements. Maybe in a situation where an agency like TURPA determined down the road that there were false statements, maybe an application would be not approved. Maybe it would be revoked later. But the Norr-Pennington Doctrine immunizes that speech against civil claims and for damages such as are being brought by Garmon. And it has to, or else there would be a chilling effect upon the ability of private parties like my clients to bring that petitioning activity if they were fearful that the speech or representations made would subject them to civil liability. And we want to promote that speech and petitioning activity as a society. Since you're almost out of time, let me make sure my colleagues don't have any questions of you. Okay, they don't. So, if you wrap up in 15 seconds. I had wrapped up, Your Honors. Thank you very much. Well, you wrapped up a little ahead of time then. So, good for you. Thank you. Okay, thank you. All right, that'll take us back. I gave the plaintiff appellant two minutes to, I believe, didn't I? He had. That's what time. Oh, he had more time. So, you have two minutes and 59 seconds. I'm sorry. I shorted you. So, you have two minutes and 59 seconds for rebuttal. I apologize. That's fine. The central, the overriding issue, the core issue in this complaint, strip of all emotional and intentional infliction of emotional distress, Nora Pennington, false misrepresentation, strip, take all that away. How does a person challenge an illegal decision by the TRPA? How does that work? Look at the compact, 6J3 says, if you're in a grieved party, you can challenge, and you take certain steps, you can challenge the decisions of the agency. The first time this court issued a memorandum decision, it found that Mr. Garmong was in a grieved party, and that's law of the case now. Well, and the district court assumed standing. So, I don't want to say you're wasting your time, but it seems that standing is established and assumed here. True. But I'm driving at a point. So, the next step is, can you file a petition for judicial review or a complaint alleging judicial review? The district court and the respondents, the appellees, have said, no, there's nothing in this complaint that would tell us that this is a petition for judicial review. Look at paragraph 71 in the first amendment complaint, and I'm sorry to do this, but let me read this. And if this isn't plain and simple statement of a petition for judicial review, I don't know what is. It says, plaintiff has met the article three and prudential standing requirements. He's an aggrieved person. He's authorized by Congress to bring an action to enforce a private right in federal court. We've got it right here in front of us, and we can read it. What part of your complaint is paragraph 71 in? It's in the general allegations before we get to the... And the plaintiff standing to sue part of your complaint. Right. But it's incorporated by reference. Just like when you directed us earlier to section 2, or paragraph 2, it's in the jurisdictional part of your complaint. That's the challenge. I mean, you're grabbing, it's a very long complaint, and you're grabbing various lines out of it to say, but when you actually get to your claims, your claims seem to be things like, no, I'm making an intentional infliction of emotional distress claim. I'm using that one because that's the most egregious. Your Honor, I... But you say that, and then they come back and say, you can't make that kind of claim, and you don't say, no, I meant to say that I'm bringing a statutory petition for review claim. I just happen to use the label intentional infliction of emotional distress. You don't say that. So, I mean, if your complaint was a pro se complaint, then maybe we would have to read it that way. But when it's not a pro se complaint, and you have Twombly, they have a right to be there. They're actually doing. Your Honor, paragraph 71 and paragraph 72, which I was going to read to the court, I'm looking at paragraph 104, which is the first paragraph and the first claim for relief, and it says, we incorporate by reference the preceding paragraphs. I don't know what else to do here. I mean, this is a petition for judicial review at heart. We are claiming that this permit should never have been granted, and that the TRP violated its own regulations. And I think we're off looking at labels. If it's true, their argument is that you can't bring a claim for intentional infliction of emotional distress, because that's preempted, because the only thing you can bring is a petition for judicial review under the statute. If that's true, and if you agree now that that's true, how many claims should you have brought? Based on what I'm hearing from the court today, I should have brought less. One. But, you know, for instance, there's a case called Williams, City of Williams versus Stillwell, and it says that unless the statutory scheme, in this case the compact, states otherwise, it does not preclude 1983 actions. In other words, a statutory scheme like the Environment, you know, the Clean Water Act, something like that, if it's meant to preclude enforcement under 1983, it should say that. And I direct this court's attention to Stillwell versus the City of Williams. But Your Honor, I don't want this court to get focused on intentional infliction of emotional distress. I don't want the tail to wag the dog here. Any fair reading of this complaint, big as it is, says it's a petition for judicial review. And this is the pleading stage. This is a fair notice of what we're trying to do here. All right. Unless my colleagues have additional questions, we've given you an additional two minutes, so they do not appear to have additional questions, so I'm going to conclude argument in this case. Thank you, all parties, for your arguments in this case. This matter will stand submitted. Thank you, Your Honor. Thank you. Thank you, Your Honor. And I believe that's the last case on our calendar, so that would put us in recess for the week. All rise.
judges: Gilman, CALLAHAN, VANDYKE